UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 16-61833-CIV-ALTONAGA/O'Sullivan

STEPHEN DETATA,

      Plaintiff,
v.

VERIZON WIRELESS PERSONAL
COMMUNICATIONS, LP,

      Defendant.
_____/

## ORDER

**THIS CAUSE** came before the Court upon Defendant, Verizon Wireless Personal Communications, LP's ("Defendant['s]") Motion to Compel Arbitration and Stay Judicial Proceedings ("Motion") [ECF No. 17], filed on August 31, 2016. Plaintiff, Stephen DeTata ("Plaintiff") filed a Response . . . ("Response") [ECF No. 21] on September 19, 2016; and Defendant filed a Reply . . . ("Reply") [ECF No. 22] on September 29, 2016. The Court has carefully considered the parties' submissions, the record, and applicable law.

### I. BACKGROUND

Plaintiff alleges he started receiving automated calls from Defendant in June 2015 regarding an alleged debt he had with Defendant for wireless services. (*See* Complaint [ECF No. 1] ¶ 24). He asked Defendant's representatives to stop the automated phone calls, but he continued to receive them, up to four times a day. (*See id.* ¶¶ 25–28). Plaintiff alleges as a result of these calls Defendant violated the Telephone Consumer Protection Act, 47 U.S.C. section 227 ("TCPA"), and the Florida Consumer Collection Practices Act, Florida Statutes section 559.72 ("FCCPA"). (*See generally id.*).

Defendant contends Plaintiff was one of its wireless customers from August 12, 2014 until October 14, 2015, when Plaintiff's service was disconnected due to nonpayment. (*See* Declaration of Jennifer Dalmida ("Dalmida Declaration") [ECF No. 17-1] ¶¶ 8, 12). Defendant states Plaintiff signed an agreement ("Service Agreement") (*see* Dalmida Decl., Ex. A-1), whereby he accepted the terms of the My Verizon Wireless Customer Agreement ("Customer Agreement") (*see id.*, Ex. A-2), which requires arbitration of all disputes relating to or arising out of the Customer Agreement. (*See* Mot. 1–2). Plaintiff argues there is a question as to whether the parties entered into a valid and enforceable agreement and whether the agreement encompasses the dispute at issue. (*See* Resp. 5–6).

## II.  LEGAL STANDARD

"The Federal Arbitration Act ('FAA') establishes a general federal policy favoring arbitration." *Mims v. Glob. Credit & Collection Corp.*, 803 F. Supp. 2d 1349, 1352 (S.D. Fla. 2011). "Section 2 [of the FAA] is a congressional declaration of a liberal federal policy favoring arbitration agreements . . . ." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983) (alterations added). "As a result of the well-established federal policy favoring arbitration, the burden is on the party opposing arbitration to prove to the court that arbitration is improper." *Kozma v. Hunter Scott Fin., L.L.C.*, No. 09-80502-CIV, 2010 WL 724498, at *2 (S.D. Fla. Feb. 25, 2010) (citing *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26–27 (1991)).[1]  "District courts consider three factors in reviewing a motion to compel arbitration: (1)

---

[1] Plaintiff suggests the Court must analyze the issues presented under a summary judgment standard (*see* Resp. 3–4), yet that is not quite correct. While the burden on the non-moving party is "not unlike that of a party seeking summary judgment," *Herrera Cedeno v. Morgan Stanley Smith Barney, LLC*, 154 F. Supp. 3d 1318, 1324 (S.D. Fla. 2016) (citation omitted), the Court is not required to convert a motion to compel arbitration to one for summary judgment and is not required to allow the opportunity for discovery, *see Stewart v. Laidlaw & Co. (UK) Ltd, Inc.*, No. 11-22846-Civ, 2012 WL 280388, at *2–3 (S.D. Fla. Jan. 31, 2012) (denying limited discovery request and compelling arbitration).

[w]hether there is a valid, written agreement to arbitrate; (2) [w]ether there is an arbitrable issue; and (3) [w]hether the right to arbitrate was waived." *Booth v. S. Wine & Spirits of Am., Inc.*, No. 14-22357-CIV, 2014 WL 5523123, at *2 (S.D. Fla. Oct. 31, 2014) (alterations added; citation omitted).

### III. ANALYSIS

Plaintiff's sole argument is the Motion should be denied to allow the parties the opportunity to conduct limited discovery. He asserts issues exist regarding: (1) whether the parties formed a valid and enforceable agreement; and (2) what arbitration language was present in the agreement at the time he signed the Service Agreement. (*See* Resp. 3).

Plaintiff asserts there are two versions of the Customer Agreement, each of which uses different arbitration language. The first version is the Customer Agreement attached to the Dalmida Declaration, which requires arbitration of "any dispute that in any way relates to or arises out of this agreement." (Customer Agreement 7 (bold and capitalization omitted); *see also* Resp. 10).[2] The second version mandates arbitration for "any dispute that results from this agreement." (Resp. 8 (emphasis omitted) (quoting *Salsbery v. Verizon Wireless (VAW), LLC*, No. 2:13-cv-26419, 2014 WL 3876635, at *6 (S.D.W. Va. Aug. 7, 2014))).

But Plaintiff fails to provide any factual allegation or submission to suggest the arbitration language used in the Customer Agreement attached to the Dalmida Declaration, signed under penalty of perjury, is not the Customer Agreement he agreed to. Instead, Plaintiff includes more than four pages — nearly one third the length of the Response — of block quotes

---

[2] Plaintiff concedes this "broader worded version" produces a "different outcome[]," *i.e.*, his claims are arbitrable under the "relates to or arises out of" language. (Resp. 11 (alteration added)); *see also Shea v. BBVA Compass Bancshares, Inc.*, No. 1:12-cv-23324-KMM, 2013 WL 869526, at *4–6 (S.D. Fla. Mar. 7, 2013) (finding TCPA claim arbitrable).

from the non-binding *Salsbery* decision. It is unclear what useful purpose Plaintiff believes this serves.

Plaintiff then goes on to state he "never received a physical copy of the Customer Agreement and cannot be certain as to which version of the Customer Agreement he allegedly agreed to." (Resp. 11). This will not do. *See Herrera Cedeno*, 154 F. Supp. 3d at 1325 ("Plaintiff's mere denial that he did not receive the Agreement is not sufficient evidence, on its own[,] given that Defendants offered undisputed evidence Plaintiff signed and acknowledged . . . the terms of the Client Agreement." (alterations added; internal quotation marks and citation omitted)).

"The party opposing a motion to compel arbitration is responsible for coming forward by way of affidavit or allegation of fact to show cause why the court should not compel arbitration." *Stewart*, 2012 WL 280388, at *2 (citation omitted). Plaintiff has not provided an affidavit or any allegation of fact. Again, he only provides the unsupported assertion in his Response that he did not receive a physical copy of the Customer Agreement and cannot be sure what it said.

This is a far cry from asserting, let alone supporting such an assertion, with an affidavit under penalty of perjury stating the customer agreement he signed was the other version containing different arbitration language. Other courts have denied requests for limited discovery in similar situations. *See, e.g.*, *Herrera Cedeno*, 154 F. Supp. 3d at 1325 ("Plaintiff has not contested the authenticity of his signature on the document. . . . Because it is undisputed that Plaintiff signed the Application and Client Agreement, the burden then shifts to Plaintiff to show that no valid contract existed and to meet the burden []he must unequivocally deny that an agreement to arbitrate was reached and must offer some evidence to substantiate the denial." (first alteration added; second alteration in original; internal quotation marks and citations

4

omitted)); *Aronson v. Dean Witter Reynolds, Inc.*, 675 F. Supp. 1324, 1326 (S.D. Fla. 1987) ("[I]t is axiomatic that [a party] is not entitled to additional discovery of 'issues' he is entirely unable to establish even as a threshold matter." (alterations added)).[3]

## IV.  CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED AND ADJUDGED** that the Motion **[ECF No. 17]** is **GRANTED**. Arbitration of Plaintiff, Stephen DeTata's claims is compelled in accordance with the Service Agreement, the Customer Agreement, and the FAA.  This case is **STAYED** pending arbitration. The Clerk is directed to **administratively CLOSE** this case.  All pending motions are **DENIED as moot**.

**DONE AND ORDERED** in Miami, Florida, this 27th day of October, 2016.

_____
**CECILIA M. ALTONAGA
UNITED STATES DISTRICT JUDGE**

cc:     counsel of record

---

[3] Additionally, Plaintiff's assertions regarding the two versions of the agreement do not withstand close scrutiny.  While *Salsbery* was decided in August 2014, it was based on an agreement signed in 2010, *see* 2014 WL 3876635, at *1 — four years before Plaintiff agreed to the Customer Agreement.  Plaintiff also states there is "confusion with the dates" because the Customer Agreement is dated July 24, 2014 and Plaintiff did not sign until August 12, 2014 (Resp. 11), but there is a more straightforward explanation. Plaintiff did not actually sign the Customer Agreement; rather, by signing the Service Agreement, he agreed to the Customer Agreement.  (*See* Service Agreement).  The July 24, 2016 date on the Customer Agreement is thus not the date on which Plaintiff agreed; it is more likely the effective date of the document.  More importantly, Defendant has provided a sworn declaration stating the Customer Agreement attached as Exhibit A-2 is the version in effect at the time Plaintiff signed.  (*See* Dalmida Decl. ¶ 11).  Plaintiff has not provided any evidence to rebut this.  While Plaintiff claims he never received a physical copy of the Customer Agreement, he has not established he was entitled to one. Indeed, the Service Agreement states the customer can view the Customer Agreement anytime at verizonwireless.com or in his Verizon account.  (*See* Service Agreement).